Nobel Biocare AB and Nobel Biocare USA LLC. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. The overarching issue in this case, Your Honors, which permeates virtually all aspects of the fee order that's on appeal, centers on the  $2.3 million in attorney's fees based on its in-camera review of evidence that Nobel Biocare was denied access to, was not able to analyze, and had no ability to meaningfully contest. Let me ask you a question as a preliminary one. Let's say we agree with your argument that that should not have happened. There were a number of other issues in this case about should this guy have been discounted 2 percent or 10 percent or 20 percent. If we agree with you that the process from the beginning was flawed, do we need to get into all of those individual, this guy got 2 percent versus 5 percent, or should we send the whole thing back to redo? The threshold question of the due process violation, I agree. If you find in my favor, in my client's favor on that issue, that is reason alone to reverse the order and remand. There are other issues, of course, and each of those have separate claims of error that if the court were to address would be helpful guidance if there is a remand because we don't want to relitigate those issues without guidance from the court, of course. That issue goes to some subset of the other issues, as Judge Owens was saying, but it doesn't go to things like the multiplier and the cross-check and various other things. It only goes to how you count the hours up, right? Correct. It only goes to those issues, to some of those issues you noted, Your Honor, to the extent that the multiplier was based on an adjusted low star that derived from this secret evidence process. But Your Honor is correct that the multiplier, for example, has distinct issues and claims of error that with a reversal on this we would still have to address, but it wouldn't necessarily change the outcome on the basis of the fact that the procedure that would normally be followed, assuming that if we were to agree with your argument, would be for it to go back to the court, for you to be given a copy of the hours, you have an opportunity to make any objection to those hours, and then the court would, including the multiplier, once the court uses the low star, and then proceed from there. Is that right? That's correct, Your Honor. To the extent that the district court intends to base a fee order on the basis of the evidence of these timesheets, yes, that would be the procedure. And you aren't equivalent with the fact that the district court will base the fee order on the timesheets. You're just concerned about the fact that you didn't get a chance to look at the timesheets and make any objections there, too. Is that right? The answer is yes, but with one further explanation. Under California law, the declarations that counsel submitted were all that were required. Now, the court made an initial finding that those were not sufficient. They didn't carry their burden, because the burden rests with the plaintiffs on this issue. But if the court were to then say in its discretion, which it has the right to do, I need to see more, submit the timesheets, then yes, that is correct, Your Honor. Well, two points about that. Does California law govern these kinds of questions? On the substantive issue for the process. That substantive issue, whether you have to have timesheets or not have timesheets, whether the declarations are good enough, it's essentially a question of how you prove something. Why is that a California question? It's a very good question, Your Honor. It's one that we struggled with quite a bit. I lean on the towards of a California, because it's the process. It's the requirements. It's the evidence that you need to show to substantiate your attorney's fees. But it is a very interesting question. I can't say I have a definitive answer on that. Has there been a privilege determination made about this? Absolutely not, Your Honor. I just want to clarify what the district court would do on remand. He would first have to make a privilege determination. To determine what we get from the records, correct? Right. And so it's possible what you're going to get is going to be redacted timesheets. That would be my... And you're not claiming otherwise. No, no. And that was the offering we made in the district court, Your Honor, that we said the court asked us whether we'd like to see them or what's your views on this. I raised my hand and I said yes. I understand counsel has made some privilege objections. And we would take redacted versions of that, assuming the privilege finding has been made. Our position has not changed on that. I have one final question. It seems to me, assuming for the moment that you're right about this point of the legal question, is it really going to make a difference? That's a good question with a complicated answer, and this is what I'll tell you. I can't answer the question because I don't know what's in the timesheets. But Judge Fitzgerald certainly did an awful lot of chopping around. Sure. And a point of concern I have, Your Honor, is the fact that the court already expressed an opinion that my advocacy won't make a difference. I hadn't even argued that point. He said I had grossly overstated the effect of my advocacy. That's a point of concern for me, Your Honor, because will it make a difference? I don't know. Well, I mean, I'm not even... I'm suggesting that... I guess a harmlessness ruling would be inappropriate here. But it does strike me that he probably did do a pretty good job of going through everything and maybe chopped off more than you could have talked him into chopping off. Well, actually, and to answer that question, the court did go through. But the other claims of error that we're making here are not just pure matters of discretion. The court made factual findings as the basis for some of those cuts. The court made legal... applied legal standards that we contend were incorrect. But that you can contend anyway. You don't need to have the record to show that. I'm sorry? But you don't need the record for that. Correct. But in terms of whether... to answer your question of whether sending this back would make a difference, only if the court, of course, would address our other issues. So, for example, on the success factor, we contend that the court misapplied the law in terms of how it weighted that issue. Well, I know, but I don't understand what that has to do with seeing the records. Oh, I see what you... Okay. Well, with respect to the time that was submitted, again, what we know is what the court has identified and what the court has written off for. And, you know, part of the problem here, Your Honor, is that the court was required to articulate why it chose the specific percentages it chose. So, for example, one of the timekeepers had block billing, quarter-hour increments, and vagaries in time entries. There was a 15% reduction for that time entry. Now, based on the authorities the court cited and based on the authorities that we would argue, if given the chance on that issue, there would be a reduction in time entries. A reduction of 15% would be appropriate for just one of those billing irregularities alone. We don't know why he picked 15%, where 2,000 hours out of the 55,000-plus hours in the record were building quarter-hour increments. They got 15% reductions for multiple billing irregularities. We didn't get a say in why it should be more or less, but more importantly, we don't know why he picked that number. The Gonzalez case from this district, from this circuit, makes clear that you have to provide more. You have to explain why you chose a specific percent. Is it possible that sitting down with a mediator from this court might lead to some conclusion here rather than going back in circles again? I can't say one way or another, Your Honor, without guidance from this court. We have a very good mediator's office. We could, and often do, suspend submission of a case while you discuss with them whether mediation might be helpful. Here we're talking pure money at this point, right? You do know an awful lot, even if you don't know everything you want to know. I'm wondering whether it wouldn't be in everybody's interest to have you talk to the mediators. We did talk to the mediators, Your Honors. We spoke to the mediator before the case was resolved, before this was submitted to this court in terms of as part of this appeal. Yes, we did have that meeting of counsel. And it wasn't fruitful. So I'm not sure if a third visit to the well is going to make a difference. Anything else you want to argue about? Just one thing. So touching on the success factor, Your Honor, we contend there were both factual and legal errors in that. The success factor is the most critical factor to be considered. That's circuit law. That's California law. The court found it merely relevant here. So there's an issue of whether it applied the correct weight to that issue. But more importantly, the success is gauged by looking at what is the goal of the litigation and which of those goals you achieved. That's a standard. And what the court did here was look and said, well, there are six claims here. They all arise from a common set of wrongs. They're alleging the same violation. And therefore, the fact that, you know, only one succeeded doesn't matter. He won. And the misunderstanding of the standard is evidenced by the citation to the winner out case, which the court relied on. This is a decision of this circuit. And that court found, well, you had five claims or six claims. But you got 100 percent of the relief you were seeking. That's not this case. If you imagine the claims here as darts that are being thrown at a dart board, the court assumed that the darts were all kind of taking aim at the same bullseye. When, in fact, they were taking aim at six different bullseyes. And the reason for that is each of the claims are seeking different forms of relief. So, for example, they wanted a defect declaration for an implied indemnity claim. They wanted damages for strict liability. They wanted restitution under the Unfair Competition Act. If you don't get the implied indemnity, you don't get the defect declaration, which they didn't get here, those are goals that are not achieved. But the fact that they were all deriving from the same alleged nondisclosure violation is of no moment. That's not the standard. The court had to look and see what were you looking to get and what did you end up getting. And if you apply the correct standard, which we submit was not applied here, the analysis will be different. I notice I have three minutes. I'd like to reserve that if the court doesn't have any questions. Morning, Your Honors. Myron Moskovich with Plaintiff Yamada. I think it's important to see this claim they're making in context. First question that might occur to you is why are they appealing? They won. The first question that occurs to me as a district judge is how a judge could view time records in camera without giving the other side an opportunity to review those records and object to them. That's the first question that occurs to me. No, I understand that. Normally, I totally agree with that. That should happen. But the context of this case, the standard of review is abuse of discretion. All right? Okay. Can you address how that happened that the other side didn't get a chance to look at these records? And, you know, we aren't talking about an inconsequential, you know, amount here. It's kind of a $2.3 million amount. Plants claimed over $4 million. This judge cut that claim down by 45%. All right? They won in the court of a blow. Why didn't we appeal? Because we know this judge properly exercises discretion. Mr. Moskovitz, I understand that those are your prepared remarks, but I really want an answer to that question. Okay. Let me tell you what would have happened. Can I just say one thing before that? It doesn't seem to me that abuse of discretion is the proper standard as to the question of the procedure here. I mean, it's arguably a due process violation, and at least there's a violation of, you know, ordinary rules of court procedure. So I don't know if abuse of discretion is the right standard here. Here's what would have happened. What about that? I mean, why did you start out with an abuse of discretion standard? Because, number one, the cases are very clear that the court has enormous discretion, California and federal, in deciding attorneys' fees motion. I understand that. But what about the procedure for attorneys' fees motions? Secondly, the court has enormous discretion in setting its own calendar. This motion, it's a post-judgment motion. This is not a regular pretrial or trial motion. Post-judgment, you don't get live testimony. All right? This judge had to read 143 pages of their declarations, over 200 pages of their declarations. I'm still waiting. Pardon me? I'm still waiting to figure out how. Okay. You're going to get it right now. Okay. On top of everything this judge had to deal with, if he had to show those time records, now, he ordered the time records. They hadn't submitted them originally. That wasn't part of their case. He asked for them. He gets the time records. If he had shared them with plaintiff's counsel, here's the way it would have had to happen. All right? A lot of those records were privileged. So the first thing the judge would have had to do is give them back to plaintiff's counsel and say, what's privileged? Give me two copies, what you claim is privileged and the original copy. Now the judge has an enormous job to do. He's got to go through and decide what he thinks is validly privileged, redact, black out what's privileged, and now give them to defense counsel. Defense counsel goes through them. What do you think they're going to do? They challenged everything. They challenged the multiplier. They challenged the hour. They challenged the hourly rate. They're going to challenge that privilege. So you're going to have briefing and you're going to have argument on the privilege. I mean, this is just what happens in litigation, i.e., you have privileged claims and you have arguments about privileged claims. In other words, the more you go through it, the more it seems like there was more that didn't happen that shouldn't have happened. That's what judges do. I mean, that's what we do on the district court. But there's got to be a limit. I mean, we haven't even gotten to the challenge of the hours yet. We're going to litigate the privilege. And now, after that's all done and they get a properly redacted timesheet, now they go through the hours. There are two at a district judge's disposal. He could have appointed a receiver, a special master. He could have done any number of things, but that's what we do. And, you know, it could represent a great compromise. There are very few things at the district court level that justify ex parte communications when you're going to make a substantive ruling. Here's what Judge Fitzgerald said. Maybe he can say it better than I can. The alternative, giving you the timesheets, is to force everybody to go through and decide what is privileged and what's not and then for you to advocate on the basis of what's left over. And I just don't think that's a good use of anybody's time. Could the judge, could Judge Fitzgerald have reached the same or similar conclusions if he had received records that already had been redacted? In other words, to have the records submitted contemporaneously to him and opposing counsel with privilege matters redacted? It wouldn't have done any good because they've already given notice. They're challenging the privilege. They claim nothing was privileged. So he's going to have to do that, give a privilege log to defense counsel. He's going to have to go through it himself. You're going to have a big fight about the privilege before you even get to the hours, all right? This judge wrote a 33-page opinion. He reviewed hundreds of pages of documents. Enough is enough. I mean, how much does a judge have to put into a post-judgment motion, right? Enough to get it right. Pardon me? Enough to get it right without compromising anyone's constitutional rights. That's how much time a judge has to put into it. Your Honor, when he went through those himself, he cut everybody's hours. He reduced every attorney who worked on that case after going through it, some of them up to 20 percent. I mean, Judge Berzon's question was a good one. Isn't this harmless error? I mean, at this point you're nitpicking. My suspicion is that it's not going to change, not because he's stubborn, but because he actually did the best that one could do no matter what anybody says. But given that, but there's still due process interests involved. The only thing that's somewhat unusual about this, and it hasn't really been discussed, is that I gather that he didn't actually have to get these records at all. I'm sorry? He didn't actually have to. As a legal matter, he didn't have to get these records at all. That's right. So does that feed into the issue here at all? I mean, that is, he was essentially doing it to satisfy himself. Yeah. Judge Fitzgerald was going overboard to get this thing right. He reduced, he accepted all their arguments in part. He reduced the hours of every attorney. He cut the multiplier. He cut the award because of the success rate. I mean, he did an enormous amount of work, and then on top of that, he asked for the timesheets, which he didn't have to do. And then he goes through all the timesheets and cuts everybody. I mean, how much is a district judge expected to do when it's a post-judgment motion? It's harmless error, and he's got to have some discretion to manage his calendar. He's got other cases. You know that. You're a district court judge. He's got to have some ability to have some control, because he knew what would happen. He said that. He knew what would happen if he gave those timesheets. He's in for another 20, 30, 40 hours of his own work, let alone what's going to happen with these lawyers. It was too late to get a master on this. He'd already been immersed in this. He had to do it himself. It's not fair to the judge, aside from what it did to counsel. It's just not fair. The other issue that would be somewhat helpful to me for you to address is the cross-check notion. Let's assume that this was all done right with regard to the lodestar, and there's some language kicking around that he's supposed to cross-check against the worth of the pool, essentially. And he came up with a number, which seems like a fairly high number. Does that make any difference? Suppose the number he came up with was too high, and we would fault it. Does it make a difference as to the ultimate result? Well, as you know, he doesn't have to do the cross-check at all. He has a discretion not to do it. I thought the way he did it was entirely proper. The defense counsel was trying to say the evaluation of the settlement award is based on the actual claims made. Well, I mean, I believe there is some law in our court so indicating it certainly makes some kind of sense. In an instance here where there seems to be a vast difference between the number he used and the claims actually made. Yeah, that's because nobody can see the future. You don't know how many of these dental implants are going to fail, the reasons they're going to fail. You just don't know. I mean. Did he do it by placing a value on a guarantee, a dollar value? Is that what he did? He came up with some number. On the. . . I'm just saying that essentially like an insurance policy. That having an insurance policy is worth something even if you never use it. Is that essentially what he did? Yeah, that's relevant, and that was done here. But as the judge pointed out, you can't place a value on peace of mind of the patients and the dentist knowing that if this thing fails, they can get their money back or a different replacement. See, the Nobel's original warranty said. . . I guess what I'm really asking is should we worry ourselves about trying to figure out whether he did this number right or just say it doesn't matter? I don't think so. I think what the judge did was within the range of his discretion. He didn't have to do it at all. It's just a check. It's not the way you find the number. So I think the way he did it was proper and pretty clearly there was no abuse of discretion on that. But I do want to urge the court to take into account the difficulties of being a district court judge and handling all these things. And here you've got this post-judgment motion going on and on and on. And at some point, I think you can say, I don't have to look at these timesheets. I'd like to do it kind of as a check, like cross-checking against the valuation of the settlement. And it's much more efficient if I take a look at this. Now, if he'd come out of his chambers and said, these hours are all fine, I think we'd have a problem. I think we'd have a. . . he didn't do that. He came out and he knocked off every single attorney between 2% and 20%. And he did his job. I don't have to look at any timesheets, and I'm prepared to go forward this way. But I'd rather look at the timesheets. But if you're going to insist on seeing them, then I just won't look at the timesheets. You know, if it weren't for the privilege issue, I think I'd probably agree with you. But that privilege, the plaintiff's counsel was insistent that we have information there about witnesses we've contacted, other possible plaintiffs we've contacted, that's highly privileged. We don't want the defense counsel to see it. And there would have been a fight about that. They would have demanded a privilege log. No, I'm asking you this. When you go back, could he now say, well, forget it. I mean, if I'm going to have to go through all that, I'm just going to do it without the timesheets. I'm sorry. Suppose he now said, forget it. If I'm going to have to go through all that, i.e., give them the timesheets and go through the privilege and all that, I'm just not going to use the timesheets at all. We're going to go back to the original declarations and I'm going to work off those. Absolutely. Absolutely. Yeah. He could just say, forget the timesheets. I'm going to base it on the declarations. And based on those declarations, no reductions. No reductions at all. This could end up hurting them. Counsel, so you think the district court judge can look at ex parte information, not share it with the other side, and then say, but I'm not going to rely on it, I'm going to close my eyes to it and make the ruling, without letting the other side view it in the first place? Yeah. I think, you know, we trust district court judges to tell the truth. He could say, I happen to have looked at the timesheets myself. I'm not going to share it with you. They're not in the record for this court. But I'll just tell you, it's very hard to figure out from those timesheets what is reasonable and what's not. He could easily say, I just can't figure it out, and I'm going to go back to the original declarations. And that would be perfectly honest. Counsel, what if Nobel files this motion for summary judgment, you file yours, the district judge brings in Nobel's lawyers to talk about the motion for summary judgment, doesn't bring you in, makes his decision in favor of Nobel, is that all right? No, of course not. Okay. It's highly improper. No, I don't think that's analogous to what happened here. I really don't. This is all based on paper. It was based on paper that the judge wasn't required to look at. And he could have ignored it entirely. And what did he do? He used it to chop their fees down a total of 45 percent. And here they are appealing, complaining about it. You know, we should be appealing. But the question about the mediation, do you think it's useless? I'm sorry, about what? About going once more to see a Ninth Circuit mediator. I don't know if you were involved in any of the earlier sessions. No, I wasn't. No. Only because, as you point out, if we were to remand, it would take a very long time or could take a long time. And in the end, it's only money. So is there any point in trying again to see a mediator? There's no point in it. I don't see how they're going to benefit. It's going to take a lot more attorney's time. It's going to take the judge's time. No, I'm talking about the mediator. There's not going to be a judge involved in a mediation. Having a mediator deal with this? Well, just at least talk to a mediator about whether you ought to, whether you would reconsider whether it might be productive. Well, Your Honor, if you look at the record in this case, I don't know how else to put this, defendant is engaged in a scorched-earth policy on this attorney's case. They haven't given an inch. They're fighting everything. You have not been involved in any other mediation? No, and I doubt that mediation would work with these very aggressive defense counsel. They're fighting everything they can, every penny. And at some point, I think the district judge has to say, enough. I've got other things to do. He said that. He said, boy, if I give this to you, we're going to have a fight about the privilege. Then we're going to have a second fight about the hours. And, you know, I've put in so much time on this reviewing 144 pages from them, 200 pages from them. There was even a Daubert motion challenging an evaluation expert. Now, who had ever heard of that on an attorney's fee motion? No, these people aren't going to mediate. They're going to fight to the death on this thing. And it's not fair to the judge.  Your time is up. Thank you very much. Thank you. Thank you, Your Honors. I'd like to address a few of the questions that the panel asked a few minutes ago. Justice Berzon, to your question of whether this case can go back and the judge can simply decide the issue on the basis of declarations, the court already made a ruling on that. The October 21, 2013 order says the court cannot adequately evaluate whether the number of hours expended on the litigation were reasonable or duplicative based on the declarations. This is an issue of did they beat their burden on the basis of their initial submission. They didn't. That was the finding of the court. That was the only reason. It wasn't a matter of, oh, I'm confused, I just need a little more support. It was an unambiguous finding that they have not carried their burden, and while the law doesn't require the timesheets, I'm giving you a second chance to fix that. That's what happened here. And, Justice Owens, you raise a very good point. As I understood your question, it was, well, can this go back on the basis of the declaration and then just kind of unring the bell on the timesheets that the court's already looked at and make a decision? I don't think that could be a fair process either. I mean, I have no doubt the judge will do his best, but, you know, we're all humans after all, and at the end of the day, we've seen what we've seen and we know what we know. So to kind of just say, let's pretend all that didn't happen, let's rely on the declarations that I've already found to be inadequate, I'm not sure that's going to be a very productive exercise either. Justice Berzon, on your question of the cross-check. Say something where judges, not justices. I'm sorry. Thanks for correction. On the issue of the cross-check, I think you hit a very important point here, which was, well, should the claims matter? But I was really aiming at something else, which is if the lodestar is right, and especially if we now go back and you do it all over again. Right. What difference does it make, this cross-check? Well, the cross-check makes a difference if you actually are faithful to what the settlement agreement said. If you value it on the base of what the settlement is about, which is reimbursement for people that actually. I'm asking you why should you do that? I mean, the cross-check in the other direction tends to matter, because if you find out that somebody is getting hugely more than the time they actually spent, that would give you pause. But what difference does it make that this is, even if it would be a small percentage of what was recovered, if they actually spent the time and they can prove it up, what difference does it make? Well, the cross-check is there to check the reasonableness of the effort. Cross-check is not required, right? Correct. It's not required. So why don't we just say, well, forget it. It doesn't really matter how good it is, because it really serves not much of a function when it's done in this direction. It's important here because the court relied on it as another sounding board to show that I got it right. If he hadn't done it at all, I wouldn't be up here saying, well, you should have done a cross-check. I suppose he says, well, you know what, I'm just going to forget it, especially if you're going to make me go back and do all the hours again. I'm not doing this again.  That's certainly his prerogative, Your Honor, but that doesn't mean that the first time he did it, he got it right, and if there's an error in that, that's what I'm pointing at. Should we review it? Should we spend time worrying about it? Yeah, well, of course. Well, why of course if it doesn't matter? I mean, this court in Bluetooth has made it clear that you should strongly encourage. That's not a requirement, I agree. But which way did it come up in Bluetooth? On the way of overcompensation. Because it was a percentage award? And we're trying to cross-check it against a Lodestar? Right. All right. I'm saying when you're trying to do it in the other direction, it seems to me to have very little function. Well, I don't know of a case that says that the cross-check is only a one-way street. No, I know, but do you know of a case in which it's ever been faulted in that direction? As I stand here, no. But it's been faulted in the other direction on the success issue, which we've addressed, and that's another issue. Okay. Thank you very much. Thank you, Your Honor. Thank you both for your helpful arguments in Yamada v. Noble Biocare Holding. We will go to the last case of the day. This case is submitted, and we will go to the last case of the day.
judges: Berzon, Owens, Marbley